UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:   5/20/2020          │
└─────────────────────────────────┘
```

LAW OFFICES OF SANFORD F. YOUNG, P.C.,

                    Plaintiff,

        -against-

DR. JONATHAN LANDOW,

                    Defendant.

1:19-cv-11048-MKV

OPINION AND ORDER
VACATING DEFAULT

MARY KAY VYSKOCIL, United States District Judge:

A certificate of default was entered in this action against Dr. Jonathan Landow ("Defendant"), the sole defendant, on January 8, 2020. [ECF No. 13].  On January 13, 2020, Defendant filed a motion to vacate the certificate of default.  [ECF No. 15].  In opposition, Plaintiff filed a brief [ECF No. 22] and eight supplemental affidavits containing almost 50 exhibits [ECF Nos. 20, 21, 23–26, 32, 37].[1]  For the Reasons that follow, the Court GRANTS Defendant's motion.

## I.   Background

Plaintiff was retained to represent Defendant, Dr. Jonathan Landow from roughly April 2015 through early 2018 in a divorce proceeding in New York. Complaint, ¶ 8, 12 [ECF No. 3]; Declaration of Dr. Jonathan Landow, ¶¶ 33–44 [ECF No. 17] (hereinafter the "Landow Decl."). Plaintiff claims it is owed approximately $220,000 in legal fees in connection with that representation. Complaint at ¶ 15.

---

[1] This case was subsequently reassigned to me.

Plaintiff allegedly served Defendant at a residence in Aventura, Florida, specifically 3530 Mystic Pointe Drive (the "Florida Address").  Affidavit of Service, [ECF No. 9].  The Affidavit of Service states that service occurred on December 12, 2019 upon one "David Wilkins," whom the affidavit describes as a "Co-Resident" at this address.  *Id.*  Service of the Summons and Complaint ostensibly triggered Defendant's obligation to respond to the Complaint by January 3, 2020.  Plaintiff's basis for serving Defendant at this address – which Defendant contests – is that it is his usual place of abode.  The parties offer extensive evidence to support their competing positions on whether the Florida Address is a proper place at which to serve Defendant.  To summarize: Plaintiff argues and seeks to demonstrate that Defendant has listed or used this address as his "residence" for a wide range of purposes, including his Florida voter registration, his medical license, an employment contract, on medical forms, and in other legal proceedings. *See* ECF Nos. 21-1, 23-1, 23-5, 24-1, 24-2.  In response, Defendant admits that he has used the Florida Address, at which his girlfriend's parents reside, but contends it is merely a "mail drop." Defendant has submitted declarations from himself and from David Wilkins (his girlfriend's father), attesting that he does not and has never lived at that address.  *See* Landow Decl.; Declaration of David Wilkins, [ECF No. 18].

Dr. Landow states that he did not become aware of the Complaint until some time between December 30, 2019 and January 1, 2020, at which point he immediately retained counsel.  Landow Decl. at ¶¶ 6–9.  On January 3, Defense Counsel communicated with Plaintiff's Counsel telephonically and via email.  *See* First Affidavit of Sanford Young, Exhibit

1, ECF No. 20-1.[2]  Defense Counsel made clear his position that Dr. Landow had not been

served and requested that Plaintiff refrain from seeking a default.  *Id*.

On January 8, 2020, Plaintiff filed a proposed Certificate of Default [ECF No. 11], which

the Clerk of the Court duly entered the same day [ECF No. 13].  On January 13, 2020, Defendant

filed his Motion to Vacate the Clerk's Certificate of Default.  [ECF No. 15].

## II.  Legal Standard

Federal Rule of Civil Procedure 55(c) gives courts the authority to set aside a Certificate

of Default upon a showing of "good cause."  While this decision is within the "sound discretion"

of the trial court, the Second Circuit has established three criteria to consider:[3] "(1) whether the

default was willful; (2) whether setting aside the default would prejudice the adversary; and (3)

whether a meritorious defense is presented."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–96

(2d Cir. 1993). Courts may also consider "other relevant equitable factors," including whether

default "would bring about a harsh or unfair result."

The recognition that "default judgment is the most severe sanction which the court may

apply" frames the good cause analysis, resulting in a "strong preference for resolving disputes on

---

[2] Plaintiff inundated the Court with no fewer than *eight* affidavits in connection with his Opposition brief, seemingly attempting to litigate the entire case in one fell swoop.  In addition to hundreds of pages of exhibits, Plaintiff's First Affidavit contains 29 pages consisting primarily of arguments that repeat and expand upon his Opposition brief and go well beyond the matters necessary to address this Motion to Vacate.  Whether done in a flagrant attempt to circumvent briefing page limits or for some other reason, this should not be repeated.

[3] This test applies to both certificates of default and default judgments, though where (as here) the default is administrative only, the standard is "more forgiving."  *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 Fed. Appx. 453, 456 (2d Cir. 2011).

the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (internal quotations omitted).

The Second Circuit has made clear that:

> because defaults are generally disfavored and are reserved for rare occasions, when
> doubt exists as to whether a default should be granted or vacated, the doubt should
> be resolved in favor of the defaulting party. In other words, "good cause" and the
> criteria of the Rule 60(b) set aside should be construed generously.

*Enron Oil Corp.*, 10 F.3d at 96.

The Second Circuit has also instructed that in the context of a default, "willfulness"
requires conduct that is "more than merely negligent or careless." *S.E.C. v. McNulty*, 137 F.3d
732, 738 (2d Cir. 1998); *see also Johnson v. New York Univ.*, 324 F.R.D. 65, 70 (S.D.N.Y.
2018)), *aff'd*, No. 18-3305, 2020 WL 502388 (2d Cir. Jan. 31, 2020).  Willfulness is often found
"where the conduct of counsel or the litigant was egregious and was not satisfactorily
explained," for example, failure to meet a deadline or appear at a conference without any
explanation, extended, purposeful evasion of service, or lengthy delays in moving to vacate a
default. *McNulty*, 137 F.3d at 738–39 (collecting cases).  On the other hand, a mistaken belief
that service has not been made, even if negligent, does not rise to the level of willfulness. *Sikhs
for Justice v. Nath*, 893 F. Supp. 2d 598, 613 (S.D.N.Y. 2012) (collecting cases).

In any event, while a finding of willfulness may be significant, a motion to vacate may
still be granted if the Plaintiff would not be prejudiced and the Defendant has meritorious
defenses. *W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69–70 (2d Cir. 2013).
Delay, in and of itself, is insufficient to establish prejudice for the purposes of the good cause
analysis; "[r]ather it must be shown that delay will result in the loss of evidence, create increased
difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v.
Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Johnson*, 324 F.R.D. at 71.  The more quickly

the defendant moves to vacate after the entry of default, the less likely it is that granting the motion will prejudice the plaintiff. *Johnson*, 324 F.R.D. at 71 (describing it as "almost impossible" to establish prejudice where defaulting party appeared less than a month after the motion for default) (*citing Sea Hope Navigation Inc. v. Novel Commodities SA*, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013).

"Whether a defense is meritorious 'is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.'" *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 167 (2d Cir. 2004) (quoting *Enron Oil Corp*, 10 F.3d at 98). This is a "very low" threshold – the evidence need not be ultimately persuasive, so long at is legally sufficient "so as to give the factfinder some determination to make." *Vedder Price P.C. v. US Capital Partners, LLC*, No. 16-cv-6787-JPO, 2017 WL 4180021, at *3 (S.D.N.Y. Sept. 20, 2017) (citations omitted). However, the movant must articulate the defenses with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12-cv-1674-RJS, 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013).

## III.    Analysis

Applying each of the three criteria for "good cause" in turn, and mindful that defaults are disfavored and doubt should be resolved in favor of the defaulting party, the Court finds on the record before it that the Defendant has made a persuasive case for vacating the certificate of default.

### A. Willfulness

Plaintiff's theory as to willfulness is straightforward: Defendant was aware of the Complaint by January 1, 2020 and retained Counsel; Counsel was aware by at least January 3, 2020 that the deadline to respond was (at least arguably) that day; and Defendant did not file a response on January 3. Assuming service was proper, defendant's default was, in a literal sense, intentional.  But Defendant has made it clear that he believed he had not been been properly served, obviating the need to respond.  The parties devote much of their argument to debating the propriety of service.  However, the Court need not decide at this juncture whether service was, in fact, proper.  Precedent in this jurisdiction is clear that a good-faith belief that service was deficient is enough to preclude a finding of willfulness. *Sikhs for Justice*, 893 F. Supp. 2d at 613.  In light of this rule and the directive to favor the defaulting party on a motion to vacate a default, the Court finds there to be sufficient evidence that Defendant's failure to respond to the complaint – even if intentional in a literal sense – derived from his good-faith belief that service at the Florida Address was improper, and therefore was not "willful."

As noted above, the parties have developed an extensive record on the question of whether Defendant actually resides at the Florida Address.  However, it is not necessary for the Court to rule on that issue at this time.  It is sufficient to find that the facts on the record do not so clearly and obviously prove the sufficiency of service as to preclude Defendant's good faith belief that he had not been properly served.  Moreover, Defendant quickly moved to retain counsel, who contacted Plaintiff and requested an extension in order to properly respond with a motion to dismiss for insufficient service.  Plaintiff refused this request, demanding Defendant waive personal jurisdiction in exchange for his consent to an extension.  Unwilling to do so, the

Defendant accepted the inevitability of default with the intention of using the additional time to formulate a fulsome response.

The Court finds unpersuasive Plaintiff's claim that Defendant's conduct constitutes a willful fraud on the courts, a charge that is supported largely by conclusory allegations, references to other proceedings, and evidence speaking to the ultimate propriety of service. While Defendant's course of action may have been, at most, negligent,[4] there not enough to suggest it was taken in bad faith and thus culpable, "willful" conduct for the purposes of the good cause analysis. To the contrary, that the Defendant contacted Plaintiff for an extension of time so that he might file a motion contesting service is strong evidence of good faith.[5] While it is, of course, impossible to be certain as to Defendant's mental state, "doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96. Accordingly, the Court finds that Defendant's default was not "willful" for the purposes of the "good cause" analysis.

### B. Prejudice

The absence of any prejudice to the Plaintiff further supports vacating the default. *See W.B. David & Co. v. De Beers Centenary AG*, 507 F. App'x 67, 69–70 (2d Cir. 2013) (upholding decision to vacate entry of default even where willfulness was "questionable"). In arguing that it would be prejudiced if the Certificate of Default were vacated, Plaintiff alleges myriad instances

---

[4] Ideally, Defendant could have requested an extension from the Court directly, explaining the circumstances, his objections to service, and attempts to obtain consent from Plaintiff. A more pragmatic, head-on approach would likely have saved the parties and the Court significant time and resources.

[5] The Court frowns upon the lack of civility displayed among counsel in this case, and wonders in particular why Plaintiff's counsel would not extend a fairly common professional courtesy of extending Defendant's time to answer, particularly where, as here, Defendant claimed to have learned about the Complaint during the holidays and Defendant's counsel was not retained until New Year's Day.

of general bad conduct by Defendant.  Chief among them, Plaintiff claims that Defendant has fraudulently transferred funds from an escrow account in his matrimonial action in order to avoid creditors, insinuating that he will likely do so here.  Though not explicitly stated, this amounts to a contention that "delay will . . . provide greater opportunity for fraud and collusion."  *Johnson*, 324 F.R.D. at 71.  Plaintiff's numerous allegations of fraudulent conduct by Defendant are largely conclusory, and in any event, do not bear on the analysis of the motion to vacate the default.

While the documents provided by Plaintiff do appear to show that a transfer from the escrow account was enjoined, it was a temporary stay pending determination on the merits.  ECF No. 25-12.  *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashra*, to which Plaintiff cites extensively, is therefore inapposite.  241 F.R.D. 451 (S.D.N.Y. 2007) (denying motion to vacate where default was willful, plaintiff might be prejudiced, and defendant had no meritorious defenses), *aff'd*, 316 F. App'x 51 (2d Cir. 2009).  In *Todtman*, the court found that setting aside a default "may cause prejudice" where the defendant *had been found* to have wrongfully diverted assets in violation of an existing TRO and was held in contempt in a prior case.  *Id.* at 455.  A mere allegation, without a final determination on the merits of the claim, is far less persuasive.  Moreover, the defendant in *Todtman* waited seven months before moving to vacate the default (*id.* at 454), as opposed to the five-day delay in this case.  This is, of course, considerably less than the one-month window within which it is "almost impossible" to show prejudice.  *Johnson*, 324 F.R.D. at 71.

In short, Plaintiff has failed to articulate with sufficient specificity or direct evidence why the delay occasioned by forcing it to litigate this case on the merits will make it more likely for

some alleged fraud to occur in the future.  The Court does not find that resolving the obviously acrimonious dispute between the parties on the merits will prejudice the Plaintiff.

### C.  Meritorious Defenses

In analyzing his Motion to Vacate, it is also significant that the Defendant asserts arguably meritorious defenses to the Complaint.  *See W.B. David & Co.*, 507 F. App'x at 69–70. As a preliminary matter, Defendant satisfies the requirement that he articulate his defenses with specificity by explicitly addressing in turn each of the three claims for relief set forth in the Complaint.  Defendant's Memorandum of Law in Support of His Motion to Vacate, at 9–15, [ECF No. 16] (hereinafter "Def. Br."); *FedEx TechConnect, Inc.*, 2013 WL 5405699 at *8.  More importantly, his defenses directly attack the factual basis for each of Plaintiff's claims – whether for breach of contract, quasi-contract, or account stated – and, if proven at trial, would amount to a "complete defense."  *State St. Bank & Tr. Co.*, 374 F.3d at 167.  For example, Defendant contends that: (i) Plaintiff failed to attach any contract to the Complaint; (ii) Plaintiff did not perform the work he was hired to do; (iii) an indispensable party has not been joined; and (iv) Defendant objected to Plaintiff's invoices thereby invalidating any claim for account stated.  Def. Br. at 10–14.  Furthermore, Defendant offers some degree of evidentiary support for these contentions in the form of two contracts and an email.  ECF No. 17, Exhs. C–E; *c.f. Todtman*, 241 F.R.D. at 456 ("[d]efendants do not raise any defenses to the account stated claim" and "offer no facts whatsoever to challenge plaintiff's claim for an account stated").  Accordingly, Defendant has offered a sufficiently meritorious defense to each of Plaintiff's claims to warrant vacatur.

## IV.    Conclusion

For the foregoing reasons, Defendant's Motion to Vacate the Certificate of Default is

GRANTED.  Defendant has until June 3, 2020 to respond to the Complaint.


**SO ORDERED.**

**Date:  May 20, 2020**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**